UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KFC CORPORATION | CIVIL ACTION |
| VERSUS | NO. 16-16791 |
| IRON HORSE OF METAIRIE ROAD, LLC AND IRON ROOSTER, LLC . | SECTION "N" (5) |

## ORDER AND REASONS

Presently before the Court is a motion for summary judgment filed by plaintiff and defendant-in-counterclaim, KFC Corporation ("KFC"). (Rec. Doc. 13). Defendants, Iron Horse of Metairie Road, LLC and Iron Rooster, LLC ("Defendants"), oppose the motion. (Rec. Doc. 23). KFC filed a reply memorandum in response to Defendants' opposition. (Rec. Doc. 27). Having carefully reviewed the parties' submissions, the record, and applicable law, the Court, on the present showing made, is not in a position to find Plaintiff to have demonstrated, as required by Rule 56, that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. Thus, **IT IS ORDERED** that the motion is **DENIED**.

### I. BACKGROUND

The present case involves alleged breach of contract claims in connection with Defendants' purchase of immovable property from KFC. In 1991, Kentucky Fried Chicken of California ("KFC California")[1] purchased immovable property located at 700 Metairie Road in Metairie, Louisiana (the "Property"). (Rec. Doc. 13-1 at p. 2). After purchasing the Property, KFC California claims that it

---

[1] Kentucky Fried Chicken of California, Inc. purchased the property in 1991. In 2005, KFC California transferred the Property to an affiliated company, KFC U.S. Properties, Inc. KFC U.S. Properties entered into the Purchase Agreement with Iron Horse of Metairie Road, LLC, defendant herein (Iron Horse subsequently assigned the Purchase Agreement to its affiliate, Iron Rooster, LLC). Finally, after the Purchase Agreement was signed, KFC U.S. Properties was merged into KFC Corporation, plaintiff herein. (Rec. Doc. 13-1 at pp. 1-4).

discovered that the Property and adjoining property, located at 800 Metairie Road (the "adjoining property"), were contaminated with perchloroethylene and its metabolites, dichloroethylene, and trichloroethylene (the "PERC Contamination"), allegedly caused by the operation of a former dry-cleaning facility. (*Id.*). A lawsuit ensued regarding the PERC Contamination, in which KFC California was a named defendant. Ultimately, KFC alleges that the parties reached a settlement, and that a Stipulated Consent Decree was entered on September 9, 2002, wherein KFC California "voluntarily agreed with the Louisiana Department of Environmental Quality (the "DEQ") to remediate the PERC Contamination on the Property and on the Adjoining Property." (*Id.* at pp. 2-3).

In 2013, allegedly while "remediation was still in progress," KFC U.S. Properties, Inc. ("KFC U.S."), entered into a purchase agreement with defendant herein, Iron Horse of Metairie Road, LLC (*Id.* at p. 3). KFC contends that the Purchase Agreement included "specific references to and disclosures of" the PERC Contamination, the PERC Plume, the remediation, the voluntary remedial action plan, the environmental litigation, the settlement documents, the contract between KFC California and its environmental consultant, Professional Service Industries, Inc. ("PSI"), and the DEQ proceedings, "all of which Iron Horse had an opportunity to inquire about, study, and review prior to signing the Purchase Agreement." (*Id.*). Iron Horse subsequently assigned the Purchase Agreement to Iron Rooster, LLC, defendant herein, allegedly resulting in Iron Horse and Iron Rooster becoming "jointly, severally, and solidarily liable under the Purchase Agreement." (*Id.*).

On February 14, 2014, KFC Corporation, successor to KFC U.S., sold the Property to Iron Rooster. (*Id.* at. p. 4). On that same date, KFC Corporation, Iron Horse, and Iron Rooster signed an Assignment, Assumption, and Indemnification Agreement (the "Indemnification Agreement"). KFC alleges that pursuant to the Indemnification Agreement:

2

> [1] KFC Corporation assigned its rights under the Settlement Documents, the PSI Contract,[2] and the VRAP[3] to Iron Rooster. [2] Both defendants assumed all of the obligations of KFC California, Tricon, Yum, KFC U. S., KFC Corporation, and all of their respective related or affiliated companies, as well as their respective predecessors, successors, and assigns (collectively, the "KFC Companies"), relating to the PERC Contamination, the Environmental Litigation, the Settlement Documents, the PSI Contract, the Remediation, and the VRAP, and [3] both defendants agreed to use their best efforts to complete the Remediation in a diligent and expeditious manner at their sole cost and expense, and to also fulfill all of the KFC Companies' remaining obligations relating to the PERC Contamination, the Environmental Litigation, the Settlement Documents, the PSI Contract, and the VRAP.

(Rec. Doc. 13-1 at p. 4). Next, KFC alleges that on June 6, 2016, it was notified by the DEQ that "Since acquisition of the property by Iron Rooster, on-site remediation and monitoring of site conditions have ceased." (*Id.* at p. 5). In response to the letter, KFC claims it hired PSI to prepare a work plan with respect to the remaining remediation, which was approved by the DEQ on October 19, 2016. (*Id.* at p. 6). KFC subsequently filed this lawsuit seeking specific performance and indemnity for Defendants' alleged failure to satisfy obligations that they allegedly assumed with the purchase of the Property from KFC. (Rec. Doc. 1). In response, Iron Rooster filed an answer denying KFC's entitlement to the relief sought and asserting a counterclaim for damages due to KFC's failure to disclose the extent of the contamination at issue. (Rec. Doc. 7).

KFC filed the instant motion for summary judgment, arguing that there are no genuine issues of material fact, and that it is entitled to summary judgment on both its main demand and

---

[2] The contract between KFC California and its environmental consultant, Professional Service Industries, Inc. ("PSI"). PSI, now a third-party defendant, maintains that the contract between KFC and PSI was not assignable. (Rec. Doc. 77).

[3] The voluntary remedial action plan. (*See* Rec. Doc. 13-1 at p. 3).

3

Defendants' counterclaim, claiming: "it is undisputed that defendants have failed to complete and fulfill, in a diligent and expeditious manner, or at all, the Remediation of the PERC Contamination and KFC Companies' remaining obligations relating to the PERC Contamination, the Environmental Litigation, the Settlement Documents, the PSI Contract, and the VRAP, including payment of the Post-Closing DEQ Costs, all of which defendants became liable and obligated pursuant to the Purchase Agreement and/or the Indemnification Agreement." (Rec. Doc. 13-1 at p. 6). In support of its contention, Plaintiff claims that Defendants admitted to signing the Purchase and Indemnification Agreements, admitted that they had access to the Property and to relevant documents during the due diligence period, and admitted that they had not completed the remediation. (*Id.* at p. 7). KFC alleges that Defendants contractually assumed KFC's PERC Contamination-related obligations and agreed to defend, hold harmless, and indemnify KFC, citing to language in the signed agreements that KFC claims is "clear, explicit, [and] enforceable." (*Id.* at pp. 9-14). Thus, KFC contends that Defendants breached the Purchase Agreement and the Indemnification Agreement by failing to satisfy those contractually assumed obligations, "which defendants have admitted or not denied." (*Id.* at p. 14).

Additionally, KFC contends that "there is no genuine issue of material fact with respect to defendants' Counterclaim, and plaintiff is entitled to judgment in its favor...as a matter of law, dismissing defendants' Counterclaim, with prejudice, at defendants' sole cost and expense." (Rec. Doc. 13-1 at p. 18). KFC rejects Defendants' asserted defenses and counterclaims as lacking merit. (*Id.* at p. 15). Specifically, KFC attacks Defendants' claim that had Defendants known of the off-site remediation obligations, they would not have purchased the Property or would have paid a lower price, claiming that "their admissions clearly show that defendants knew or should have known, and certainly could have learned from an examination of the record" that the assumed obligations "also

4

included remediation of the PERC Contamination that extended onto the Adjoining Property." (*Id.* at p. 16). Finally, KFC argues that "contrary to defendants' [] allegation in their Counterclaim that plaintiff's refusal to agree to an amended VRAP constituted an abuse of rights, plaintiff prudently rejected the [proposed] amended VRAP because...[it] would have left KFC exposed to penalties and fines by the DEQ for failing to remediate contamination on the Adjoining Property." (*Id*. at p. 17-18).

In opposition, Defendants contend that summary judgment is inappropriate due to remaining issues of material fact. (Rec. Doc. 23). Defendants claim, *inter alia*, that KFC should be estopped from enforcing the Agreements because KFC and PSI "flagrantly" misrepresented the status of the remediation, and failed to disclose that KFC had abandoned remediation, which Iron Rooster relied upon to its detriment. (*Id.* at pp. 2-3, 14). Citing the affidavits of Fernando Iturralde, a Geology Supervisor/Hrydrogeologist for the LDEQ; Jacqueline McPherson, attorney representing Defendants in sale; and Joseph Caldarero, the sole member of the Defendant LLCs, Defendants claim:

> Prior to the 2014 Sale and throughout the due diligence period, KFC repeatedly assured Iron Rooster that no further remediation remained offsite and that only minimal remediation remained onsite. Neither representation was true. Among other things, the multiphase extraction system ("MPE") - the principal form of remediation adopted for the KFC Property - had been abandoned more than two years before the sale. Iron Rooster could not have discovered from the public record the fact that KFC had abandoned the MPE and KFC did not disclose its abandonment of the MPE system. In fact, KFC and its consultant repeatedly and expressly represented just the opposite.

(*Id.* at pp. 2-3). Further, Defendants claim that KFC misrepresented and failed to disclose the fact that KFC had abandoned remediation of the Property in the Agreement itself. (*Id.* at p. 9).

Next, Defendants argue that "KFC's [concealed] actions between the Due Diligence Period and the sale...fundamentally reset the DEQ's approach to the KFC property in a materially different

5

direction than was represented to Iron Rooster." (*Id.* at p. 6). As a purported example of KFC's concealed efforts Defendants refer to an alleged meeting--held the day after the due diligence period expired--where PSI and the DEQ discussed a "new path forward" to replace the current remedial plan, without notifying Defendants. (*Id.* at p. 7). Finally, Defendants contend that they diligently pursued remediation of the Property, but their efforts "were prevented due to (1) KFC's wrongful refusal to allow its 2005 VRAP to be replaced by the new 2015 VRAP that KFC itself had endorsed at the time of the 2014 Sale, and (2) KFC's wrongful action entering a new contract with PSI." (*Id.* at p. 10). Defendants claim KFC's actions are in breach of KFC's obligations, namely KFC's assignment of the VRAP and the PSI Contract to Defendants. (*See id.* at pp. 10-14).

Ultimately, Defendants assert that summary judgment should be denied because there are issues of fact regarding whether KFC misrepresented critical facts which Defendants relied upon to their detriment, and whether those misrepresentations bar KFCs' enforcement of the Agreement. (*Id.* at pp. 14-17). Defendants also argue that there remain questions of fact concerning whether KFC performed the Agreement in good faith. Finally, Defendants argue that KFC is not entitled to summary judgment as a matter of law because KFC seeks indemnity against its own fault, claiming that KFC is "wholly responsible for any delay in the remediation of the KFC Property." (*Id.* at p. 19), Further, Iron Rooster disputes that indemnity has been triggered, claiming that it has "diligently and expeditiously" pursued remediation. (*Id.* at pp. 20-21).

## II.     LAW AND ANALYSIS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of facts is

determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3)("court need consider only the cited materials"); *see also Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

Given that the both contracts provide for the application of Louisiana law (Rec. Docs. 13-9 at p. 16 and 13-11 at p. 5) and the Court has jurisdiction based on diversity, the Court's resolution of the present dispute is grounded in Louisiana law. "Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties." *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC* (La. 2013) (citations and quotations omitted). As a general rule, "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Art. 2046. Louisiana law requires that contracts be performed in good faith. La. Civ. Code Art. 1983. In Louisiana, "although a party may keep absolute silence and violate no rule of law or equity...if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth." *First American Bankcard, Inc. v. Smart Bus. Tech., Inc.*,

8

178 F. Supp. 3d 390, 401 (E.D. La. 2016). "A contract of indemnity will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms." *Polozola v. Garlock, Inc.*, 343 So. 2d 1000, 1003 (La. 1977).

Applying the foregoing principles to the evidence adduced by the parties, the Court does not find, on the present showing made, that KFC is entitled to the relief it seeks. The Court finds that the Plaintiff has failed to show the absence of genuine dispute as to any material fact. Specifically, the Court finds that whether KFC and/or PSI, KFC's consultant, made material representations regarding the status of the remediation is a plainly disputed question of fact. Additionally, although it is undisputed that the remediation is not complete, the parties dispute the extent of Defendants' alleged efforts to fulfill the remediation obligations, specifically whether such efforts were "diligent and expeditious," as required by the contract. Moreover, the parties dispute the cause for Defendants' failure to complete and fulfill the contractually required remediation. Specifically, Defendants' contested allegations that KFC interfered with Defendants' remediation efforts is significant to the indemnification claim given that the contract did not explicitly and unequivocally provide indemnification for KFC's own actions.

Given the foregoing, KFC's motion for summary judgment is **DENIED** without prejudice. At present, the Court finds that, on the showing made, there remain numerous issues of material fact that are better decided by the trier of fact at trial on the merits.

New Orleans, Louisiana, this 8th day of May 2018.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE