UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KFC CORPORATION                                    CIVIL ACTION

VERSUS                                                    NO. 16-16791

IRON HORSE OF METAIRIE ROAD,                SECTION "R" (5)
LLC AND IRON ROOSTER, LLC

## ORDER AND REASONS

Before the Court is plaintiff's motion for summary judgment on defendants' counterclaims.[1]  For the following reasons, the Court grants summary judgment as to the counterclaim for detrimental reliance and denies summary judgment as to the counterclaim for abuse of rights.

## I.     BACKGROUND

### A. Environmental Contamination

This case arises out of a dispute over the remediation of environmental contamination on property in Metairie, Louisiana.[2]  In 1991, Kentucky Fried Chicken (KFC) of California purchased a piece of real property located at 702 Metairie Road in Metairie, Louisiana (the Property).[3]  KFC California later

---

[1]    R. Doc. 65.
[2]    R. Doc. 1.
[3]    R. Doc. 65-3 at 1; R. Doc. 76-1 at 2.

learned that the Property and an adjoining property located at 800 Metairie Road were contaminated with perchloroethylene and its metabolites (the PERC contamination).[4] According to the complaint, this contamination was caused by a dry-cleaning facility that operated on the premises before KFC California purchased the Property.[5]

In 2000, the owner of the adjoining property filed suit against KFC California and other defendants over the environmental contamination.[6] The litigation ended in a settlement and stipulated consent decree.[7] In the consent decree, KFC California agreed to remediate the PERC contamination on its property at 702 Metairie Road and the adjoining property located at 800 Metairie Road.[8] The agreement provided that remediation would be subject to oversight and approval by the Louisiana Department of Environmental Quality (DEQ), and would follow timetables and deadlines set by the DEQ.[9]

In November 2004, KFC California completed a Voluntary Remedial Action Plan (VRAP) prepared by Professional Service Industries, Inc. (PSI).[10]

---

[4]     R. Doc. 65-3 at 1; R. Doc. 76-1 at 2.
[5]     R. Doc. 1 at 2.
[6]     R. Doc. 1-2; R. Doc. 65-3 at 2; R. Doc. 76-1 at 2.
[7]     R. Doc. 1-2.
[8]     *Id.* at 2.
[9]     *Id.* at 3.
[10]    R. Doc. 13-13; R. Doc. 13-16.

PSI is an environmental consultant.[11]  This plan was submitted in March 2005 and approved by the DEQ.[12]  In 2005, KFC California transferred its interest in the property to KFC U.S. Properties, Inc.[13]  KFC U.S. Properties later merged into Plaintiff KFC Corporation.[14]  KFC prepared several addendums to the VRAP, which were approved by DEQ.[15]

### B. Sale of the Property

On September 20, 2013, Defendant Iron Horse of Metairie Road, LLC, agreed to purchase the Property from KFC in a written purchase agreement.[16]  The purchase agreement provided for a 30-day inspection and due diligence period, and gave Iron Horse the right to cancel the purchase agreement during this period.[17]  Iron Horse later assigned the purchase agreement to Defendant Iron Rooster, LLC.[18]  On February 14, 2014, KFC sold the property to Iron Rooster.[19]  On the date of sale, KFC, Iron Rooster, and Iron Horse signed an Assignment, Assumption, and Indemnification

[11]     R. Doc. 65-3 at 2; R. Doc. 76-1 at 3.
[12]     R. Doc. 13-13; R. Doc. 13-17 at 39.
[13]     R. Doc. 65-3 at 3; R. Doc. 76-1 at 3.
[14]     R. Doc. 65-3 at 7; R. Doc. 76-1 at 5.
[15]     R. Doc. 13-13 at 2.
[16]     R. Doc. 13-9; R. Doc. 65-3 at 3; R. Doc. 76-1 at 4.
[17]     R. Doc. 13-9 at 2; R. Doc. 65-3 at 3; R. Doc. 76-1 at 4.
[18]     R. Doc. 65-3 at 7; R. Doc. 76-1 at 5.
[19]     R. Doc. 65-3 at 7; R. Doc. 76-1 at 5.

Agreement.[20] The indemnification agreement provides that Iron Horse and Iron Rooster assume KFC's obligations related to the contamination, the remediation, and the settlement agreement, and that they will complete the remediation "in a diligent and expeditious manner."[21] The preamble to the indemnification agreement states that remediation "is in progress pursuant to a voluntary remediation plan" and "was and is being handled by Professional Services Industries, Inc. (PSI)."[22]

### C. Post-Sale Remediation Issues

After Iron Rooster purchased the property, it retained PSI to continue working on the environmental remediation.[23] Joseph Caldarera, defendants' sole member, attests that, in March 2014, Iron Rooster authorized PSI to undertake confirmatory soil sampling to verify the required remediation.[24] In March 2015, PSI submitted a revised VRAP to the DEQ on Iron Rooster's behalf.[25] According to Caldarera, the 2015 VRAP was not accepted by the DEQ because KFC's 2005 VRAP remained in place.[26] Caldarera asserts that

---

[20] R. Doc. 13-11; R. Doc. 65-3 at 7; R. Doc. 76-1 at 5.
[21] R. Doc. 13-11 at 3.
[22] *Id.* at 2.
[23] R. Doc. 23-4 at 12.
[24] *Id.* at 1, 13.
[25] R. Doc. 76-5; *see also* R. Doc. 23-4 at 13; R. Doc. 65-2 at 2.
[26] R. Doc. 23-4 at 13.

KFC unreasonably refused to withdraw its 2005 VRAP.[27]  Calderera further attests that, in light of KFC's refusal and in an effort to keep remediation on track, Iron Rooster gave authorization to PSI in May 2015 to begin additional testing to determine the status of contamination on the adjoining property.[28] In May 2016, PSI provided results of this testing to the DEQ.[29]

In June 2016, the DEQ sent letters to both KFC and Iron Rooster regarding PSI's report and the status of remediation.[30]  The June 14, 2016 letter to Iron Rooster states that PSI's off-site remediation sampling revealed that constituents of concern exceeding applicable standards were present on the adjoining property and would require additional remediation.[31]  The June 6, 2016 letter to KFC states that on-site remediation and monitoring of site conditions ceased after Iron Rooster purchased the property, and that KFC remains obligated to remediate the on-site and off-site contamination.[32]

On December 1, 2016, KFC filed suit against Iron Rooster and Iron Horse.[33]  The court has diversity jurisdiction under 28 U.S.C. § 1332.[34]  KFC

---

[27]  *Id.* at 14.
[28]  *Id.*
[29]  *Id.*; R. Doc. 76-4 at 1.
[30]  R. Doc. 1-2; R. Doc. 76-4.
[31]  R. Doc. 76-4 at 1.
[32]  R. Doc. 1-2 at 41-42.
[33]  R. Doc. 1.
[34]  *Id.* at 1-2.

alleges that defendants failed to fulfill their obligations under the purchase agreement and the indemnification agreement to remediate the PERC contamination.[35] On February 23, 2017, defendants filed an answer, affirmative defenses, and counterclaims for detrimental reliance and abuse of rights.[36] Defendants assert that, during the due diligence period, KFC directed their questions regarding the condition of the property and the status of remediation to PSI.[37] PSI allegedly represented to defendants that remediation for the on-site property was almost finished and failed to disclose that remediation was being done or was required for the adjoining property.[38] Defendants allege that they detrimentally relied on these representations in purchasing the property.[39] Further, defendants assert that KFC engaged in an abuse of rights because it wrongfully refused to execute an amended VRAP application.[40]

On August 15, 2017, KFC moved for summary judgment on its breach of contract claim and defendants' counterclaims.[41] Judge Engelhardt denied the motion, finding genuine issues of fact as to whether KFC or PSI made

---

[35] *Id.* at 9-10.
[36] R. Doc. 7.
[37] *Id.* at 9.
[38] *Id.*
[39] *Id.*
[40] *Id.* at 10-11.
[41] R. Doc. 13.

material representations regarding the status of remediation, the extent of defendants' alleged efforts to fulfill their remediation obligations, the cause of defendants' failure to complete the required remediation, and KFC alleged interference with defendants' remediation efforts.[42]  On May 18, 2018, the case was transferred to this section of the Court.[43]

KFC now moves for summary judgment on defendants' counterclaims on the grounds that these claims are prescribed.[44]

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the

---

[42]    R. Doc. 87 at 9.
[43]    R. Doc. 94.
[44]    R. Doc. 65.

nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an

essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (quoting *Celotex*, 477 U.S. at 322).

## III. DISCUSSION

### A. Detrimental Reliance

#### 1. *Applicable Statute of Limitations*

The parties first dispute the prescriptive period applicable to defendants' counterclaim for detrimental reliance. The elements of detrimental reliance under Louisiana law are "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Parish Consl. Gov't*, 907 So. 2d 37, 59 (La. 2005). In Louisiana, the statute of limitations for delictual, or tort, actions is one year and the statute of limitations for

contractual claims is ten years. *See* La. Civ. Code arts. 3492, 3499; *Roger v. Dufrene*, 613 So. 2d 947, 948 (La. 1993). State and federal courts have "applied both statutes to claims denominated as 'detrimental reliance' because the nature of the action, rather than its label, governs which statute applies." *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 487 (5th Cir. 2009).

When "a party has been damaged by the conduct of another arising out of a contractual relationship," the plaintiff may have the choice to recover damages in either tort or contract, and "the prescription applicable is determined by the character which plaintiff gives his pleadings and the form of his action." *Fed. Ins. Co. v. Ins. Co. of N. Am.*, 263 So. 2d. 871, 872 (La. 1972). Thus, "Louisiana courts look to the allegations and prayer for relief of the petition to determine the true nature of the action and the applicable prescriptive period." *Clark v. Constellation Brands, Inc.*, 348 F. App'x 19, 22 (5th Cir. 2009); *see also SS v. State ex rel. Dep't of Soc. Servs.*, 831 So. 2d 926, 931 (La. 2002); *Starns v. Emmons*, 538 So. 2d 275, 277 (La. 1989).

In determining the nature of the action, courts consider whether the claim derives from a "breach of promise," indicating a contract claim, or a "breach of duty," suggesting a tort claim. *See Keenan*, 575 F.3d at 487. The former "flow[s] from the breach of a special obligation contractually assumed

by the obligor, whereas the latter flow[s] from the violation of a general duty to all persons." *Clark*, 348 F. App'x at 22 (quoting *Trinity Univ. Ins. Co. v. Horton*, 756 So. 2d 637, 638 (La. App. 2 Cir. 2000)). Louisiana courts treat a claim as a tort action "unless a specific contract provision or duty is breached." *Id.*

Here, the counterclaim asserts that KFC's employees refused to speak to defendants' representative about the status of remediation during the due diligence period, and instead directed him to speak to PSI.[45] Defendants allege that PSI advised defendants' representative that remediation for the Property was almost finished.[46] Further, PSI allegedly failed to disclose that remediation was being done or was required for the adjoining property.[47] Defendants assert that they detrimentally relied on these representations when they purchased the Property, that KFC "owed defendants a duty to timely, clearly and unambiguously disclose the extent of the contamination, particularly the contamination off-site, and the obligations to remediate," and that they were damaged by KFC's failure to disclose.[48]

---

[45] R. Doc. 7 at 9.
[46] *Id.* at 9.
[47] *Id.*
[48] *Id.* at 9-10.

The factual allegations underlying this counterclaim sound in tort rather than contract. Defendants assert a breach of a general duty to disclose, and do not reference any breach of specific contractual duties. *See Clark*, 348 F. App'x at 22 (holding that a plaintiff's claim that he entered into a severance agreement because of the defendant's failure to state the true reason for his termination was based in tort rather than contract); *5876 57th Dr., LLC v. Lundy Enter., LLC*, No. 13-5012, 2014 WL 1246842, at *5 (E.D. La. 2014) (finding that a breach of a general duty to provide accurate information is actionable in tort, not contract); *Ames v. Ohle*, 97 So. 3d 386, 393 (La. App. 4 Cir. 2012) (finding that a detrimental reliance claim was delictual rather than contractual because the plaintiff "assert[ed] that she relied on false statements and omissions, not specific promises that were never performed").

In opposition to summary judgment, defendants argue that their detrimental reliance claim is contractual in nature because it arises out of specific commitments made by KFC.[49] Specifically, defendants assert that KFC represented in the purchase agreement and the assignment agreement that remediation was "in progress" on the Property and was being handled

---

[49] R. Doc. 76 at 9.

by PSI.[50]  Defendants further assert that KFC and PSI made express representations that any remaining contamination and remediation could be addressed through a new VRAP.[51]

But these allegations do not appear in defendants' counterclaim.  The counterclaim alleges that PSI, acting as KFC's agent, failed to fully disclose the extent of contamination and needed remediation.[52]  The counterclaim does not mention any representations or promises made in the parties' contracts.  *Cf. Fed. Ins. Co.*, 263 So. 2d at 873 (noting that the plaintiff's petition specifically requested reimbursement under the contract).  Nor does the counterclaim allege any direct representations by KFC to defendants, beyond directing them to speak with PSI.[53]  Although defendants' abuse of rights counterclaim outlines KFC's alleged refusal to execute the amended VRAP, defendants do not allege that KFC made any promises with regard to the VRAP.[54]

"[T]he nature of the action" revealed in defendants' counterclaim is therefore based in tort rather than contract.  *Clark*, 348 F. App'x at 22; *see also Fed. Ins. Co.*, 263 So. 2d at 872.  Even if the Court were to permit

---

[50]    *Id.* at 3, 5.
[51]    *Id.* at 5-6.
[52]    R. Doc. 7 at 9.
[53]    *Id.*
[54]    *Id.* at 10-11.

defendants to supplement their counterclaim with allegations that KFC represented that remediation was "in progress" in the purchase agreement and the indemnification agreement, this would be insufficient to establish a contractual claim for detrimental reliance. There is no indication in the contracts that KFC specifically promised or warrantied that remediation was currently underway or the status of the remediation. *Cf. Lundy*, 2014 WL 1246842, at *5 (finding that detrimental reliance claim was based in contract because the defendants warrantied that they had applicable permits and licenses in an estoppel certificate). Moreover, a statement that remediation is "in progress" is insufficiently specific to support defendants' allegations that PSI and KFC represented that remediation was "almost finished" and failed to disclose the need for remediation on the adjoining property.[55]

Defendants also argue that KFC violated its implied contractual obligation to perform contracts in good faith because it failed to disclose a meeting with the DEQ, failed to disclose that the multi-phase extraction (MPE) system contemplated in the 2005 VRAP had been abandoned, encouraged Iron Rooster to rely on a new proposed VRAP and then refused to allow the new VRAP to be implemented, and induced PSI to abandon its

---

[55] R. Doc. 7 at 9.

relationship with Iron Rooster and return to work for KFC.[56]  Defendants' argument with regard to the alleged failures to disclose runs contrary to caselaw holding that omissions and misrepresentations in contractual negotiations are based in tort rather than contract.  *See Clark*, 348 F. App'x at 22; *Lundy*, 2014 WL 1246842, at *5; *Ames*, 97 So. 3d at 393.

Defendants' arguments regarding the new proposed VRAP and Iron Rooster's relationship with PSI fall outside the scope of their pleaded claim for detrimental reliance.  Defendants' counterclaim alleges only a failure to disclose the extent of contamination and of needed remediation, and does not allege that defendants relied on representations by KFC related to the PSI contract or the new VRAP.[57]  The counterclaim thus fails to provide fair notice to KFC that defendants might assert such claims.  Defendants may not raise new factual scenarios unsupported by allegations in the counterclaim for the first time in opposition to summary judgment.  *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

---

[56]     R. Doc 76 at 6-7.
[57]     R. Doc. 7 at 9-10.

Accordingly, the Court finds that defendants' counterclaim for detrimental reliance sounds in tort, and the one-year prescriptive period for delictual actions applies. *See* La. Civ. Code art. 3492.

## 2. *Time of Discovery*

KFC argues that the detrimental reliance counterclaim is prescribed because defendants knew or should have known about the alleged misrepresentations when they purchased the Property on February 14, 2014.[58] The prescriptive period for delictual actions "commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492. The burden of proof is ordinarily on the party asserting prescription. *See Eastin v. Entergy Corp.*, 865 So. 2d 49, 54 (La. 2004). But, if "more than a year has elapsed between the time of the tortious conduct and the filing of the tort suit, the burden shifts to [the party bringing the claim] to demonstrate prescription was suspended or interrupted." *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 517 (5th Cir. 2009). Here, KFC's alleged failure to disclose occurred over three years before defendants filed their counterclaim.

Prescription may be suspended under the doctrine of *contra non valentem* if the "cause of action is not known or reasonably knowable by the

---

[58] R. Doc. 65-1 at 5.

plaintiff." *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994). In such cases, "[p]rescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002). "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Id.* at 510-11. The Louisiana Supreme Court has cautioned that "[t]his standard is exceedingly stringent" and prescription should be suspended "only in exceptional circumstances." *Eastin*, 865 So. 2d at 54.

Defendants' counterclaim is based on allegations that PSI, acting as KFC's agent, (1) represented that remediation was almost complete and (2) failed to disclose that remediation was being done or was required for the adjoining property.[59] Defendants argue that they were first put on notice of the facts underlying this counterclaim when they received the June 14, 2016 letter from the DEQ detailing major deficiencies in remediation and deficiencies in the adjoining property.[60]

The Court finds no genuine dispute that defendants had constructive knowledge of the facts underlying their detrimental reliance claim more than

---

[59]    R. Doc. 7 at 9.
[60]    R. Doc. 76 at 10; R. Doc. 76-4.

one year before they filed their answer and counterclaims on February 23, 2017. "[T]he prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999). Although the letter from the DEQ may have revealed the full extent of needed remediation for the first time, this does not indicate that prescription was suspended until June 2016. *See Fontenot v. ABC Ins. Co.*, 674 So. 2d 960, 964 (La. 1996) (explaining that "[i]gnorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription").

It is undisputed that, when defendants purchased the Property, they were aware of the past environmental contamination and expressly agreed to assume and fulfill KFC's obligations related to the contamination, the litigation settlement, and the remediation.[61] Defendants assert that they reasonably relied on PSI's assurances both before and after the sale that the DEQ would require only minimal further remediation on the Property and no off-site investigation or remediation.[62] But defendants' representative,

---

[61]    R. Doc. 13-11 at 3-4.
[62]    R. Doc. 76 at 12.

Caldarera, attests that Iron Rooster authorized PSI to commence additional testing of the status of contamination of the adjoining property in May 2015.[63]  According to Caldarera, Iron Rooster authorized this testing "[i]n light of KFC's unreasonable refusal [to withdraw the 2005 VRAP], and in a further effort to keep remediation on track."[64]  Defendants' counterstatement of material facts asserts that "KFC had no right to condition its approval of a new VRAP on remediation of adjacent property, inasmuch as that condition was not part of, or otherwise expressed, as part of KFC's endorsement of the proposed new VRAP in February 2014."[65]

The facts as presented by defendants and their representative make clear that, as of May 2015, defendants were aware of a possible dispute over the need for remediation on the adjoining property.  This was "sufficient information to incite their inquiry" into whether KFC and PSI misrepresented that no remediation would be needed on the adjoining property.  *Fontenot*, 674 So. 2d at 964.

Defendants also had information before 2016 that reasonably should have prompted further inquiry into KFC's alleged representation that remediation on the Property was almost complete.  Defendants assert that

---

[63]    R. Doc. 23-4 at 14.
[64]    *Id.*
[65]    R. Doc. 76-2 at 16.

19

KFC failed to disclose before the sale that the 2005 VRAP was no longer viable, that the MPE system contemplated in this plan became inoperable in early 2012, and that KFC abandoned the MPE system.[66] Defendants argue that the June 14, 2016 letter from the DEQ first put them on notice that, among other issues, "the MPES ha[d] been dismantled and removed off-site."[67] Defendants contend that the abandonment of the MPE system was inconsistent with KFC's assurances that remediation was in progress.[68]

But defendants do not dispute that they had access to the DEQ proceedings related to the remediation that were maintained in the DEQ's Electronic Document Management System (EDMS) before the sale.[69] The existence of the DEQ file is specifically mentioned in the purchase agreement, and Iron Horse acknowledged in the agreement that it had studied or reviewed or would have the opportunity to study and review this file during the due diligence period.[70] Defendants also admit that a quarterly report available on EDMS, dated August 20, 2013, states that "the MPE system was not operating during the current quarter, and has been

---

[66]    R. Doc. 76 at 14-15; R. Doc. 76-2 at 9-10.
[67]    *Id.* at 12-13; *see also* R. Doc. 76-4 at 2.
[68]    R. Doc. 76 at 15 n.64.
[69]    R. Doc. 65-3 at 9; R. Doc. 76-1 at 5-6.
[70]    R. Doc. 13-9 at 7.

inoperable since January 2012 after major equipment breakdown occurred."[71]

Defendants argue that this quarterly report was insufficient to put them on notice that the MPE system had been abandoned because the report referenced conditions during the time period leading up to March 31, 2013, almost a year before the purchase was finalized.[72] Defendants also contend that they lacked adequate notice because KFC failed to file quarterly reports for the second, third, and fourth quarters of 2013, despite being obligated to do so under the VRAP.[73] But, at a minimum, the first quarterly report was sufficient to "put the [defendants] on guard and call for inquiry" into whether the MPE system had been repaired and whether remediation was advancing as represented by KFC. *Campo*, 828 So. 2d at 511. That KFC allegedly failed to submit additional required quarterly reports before sale should have prompted more rather than less inquiry from a reasonable buyer.

In sum, defendants fail to point to facts to suggest that "exceptional circumstances" justify a suspension of the prescriptive period in this case. *See Eastin*, 865 So. 2d at 54. The Court finds no genuine dispute that defendants had constructive knowledge of the factual basis of their

---

[71] R. Doc. 65-3 at 3, 9; R. Doc. 76-1 at 3, 5-6.
[72] R. Doc. 76 at 21-22.
[73] *Id.* at 23.

detrimental reliance counterclaim before February 2016. Accordingly, this claim is prescribed and KFC is entitled summary judgment.

## B. Abuse of Rights

Defendants' abuse of rights counterclaim is subject to a one-year prescriptive period. *See* La. Civ. Code art. 3492, cmt. b; *see also Donahue v. Strain*, No. 15-6036, 2017 WL 3311241, at *19 (E.D. La. 2017). Defendants assert a claim for abuse of rights based on KFC's alleged refusal to execute an amended VRAP without serious or legitimate motive.[74] KFC argues that this claim is prescribed because defendants knew of KFC's alleged refusal to execute the VRAP in March 2015.[75] In support of this argument, KFC cites a July 7, 2016 letter from Caldarera to the DEQ stating his concern with "the refusal of KFC to execute the VRAP that was revised and presented by PSI sixteen months ago."[76]

But Caldarera's July 2016 letter makes clear that KFC was not asked to join the VRAP in March 2015. Calderera states that PSI and Iron Rooster assumed that there was no need to include KFC on the application, but later listed KFC as a co-applicant at KFC's request.[77] Defendants argue that their

---

[74] R. Doc. 7 at 10-11.
[75] R. Doc. 65-1 at 11.
[76] *Id.*; R. Doc. 65-2 at 2.
[77] R. Doc. 65-2 at 2.

abuse of rights claim is not prescribed because KFC was still considering joining the VRAP application at least as late as April 2016.[78]  Defendants attach an email from KFC's counsel to defendants' previous counsel dated April 4, 2016 asking for a copy of the VRAP application.[79]

It is unclear from the record when KFC allegedly refused to execute the amended VRAP, and the Court therefore finds a genuine dispute as to whether the abuse of rights counterclaim is prescribed.  KFC is not entitled summary judgment on this claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART plaintiff's motion for summary judgment.  Defendants' counterclaim for detrimental reliance is DISMISSED WITH PREJUDICE.  The Court DENIES summary judgment as to defendants' counterclaim for abuse of rights.

New Orleans, Louisiana, this __30th__ day of May, 2018.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[78]  R. Doc. 76 at 19.
[79]  R. Doc. 76-6.