UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KFC CORPORATION                                   CIVIL ACTION

VERSUS                                            NO. 16-16791

IRON HORSE OF METAIRIE ROAD,                      SECTION "R" (5)
LLC AND IRON ROOSTER, LLC

## ORDER AND REASONS

Before the Court is (1) defendants' motion to enforce settlement,[1] and
(2) defendants' motion for a jury trial and discovery.[2]  The Court denies the
motion to enforce settlement because defendants fail to present evidence
that the parties entered into an enforceable compromise.  The Court grants
defendants' motion for a jury trial, but denies their motion for additional
discovery.

## I.   BACKGROUND

### A.   Litigation Background

This case arises out of a dispute over the remediation of environmental
contamination on property in Metairie, Louisiana.[3]  In 1991, Kentucky Fried

---

[1]   R. Doc. 166.
[2]   R. Doc. 171.
[3]   R. Doc. 1.

Chicken (KFC) of California purchased a piece of real property located at 702 Metairie Road in Metairie, Louisiana (the Property).[4] KFC California later learned that the Property and an adjoining property located at 800 Metairie Road were contaminated with perchloroethylene and its metabolites (the PERC contamination).[5] According to the complaint, this contamination was caused by a dry-cleaning facility that operated on the premises before KFC California purchased the Property.[6]

In 2000, the owner of the adjoining property filed suit against KFC California and other defendants over the environmental contamination.[7] The litigation ended in a settlement and stipulated consent decree.[8] In the consent decree, KFC California agreed to remediate the PERC contamination on the Property and the adjoining property.[9] The agreement provided that remediation would be subject to oversight and approval by the Louisiana Department of Environmental Quality (LDEQ), and would follow timetables and deadlines set by the LDEQ.[10]

---

[4]    R. Doc. 65-3 at 1; R. Doc. 76-1 at 2.
[5]    *Id.*
[6]    R. Doc. 1 at 2.
[7]    R. Doc. 1-2; R. Doc. 65-3 at 2; R. Doc. 76-1 at 2.
[8]    R. Doc. 1-2.
[9]    *Id.* at 2.
[10]   *Id.* at 3.

In November 2004, KFC California completed a Voluntary Remedial Action Plan (VRAP) prepared by Professional Service Industries, Inc. (PSI).[11] PSI is an environmental consultant.[12] This plan was submitted in March 2005 and approved by the LDEQ.[13] In 2005, KFC California transferred its interest in the property to KFC U.S. Properties, Inc.[14] KFC U.S. Properties later merged into plaintiff KFC Corporation.[15] KFC prepared several addenda to the VRAP, which were approved by LDEQ.[16]

On September 20, 2013, defendant Iron Horse of Metairie Road, LLC, agreed to purchase the Property from KFC in a written purchase agreement.[17] The purchase agreement provided for a 30-day inspection and due diligence period, and gave Iron Horse the right to cancel the purchase agreement during this period.[18] Iron Horse later assigned the purchase agreement to defendant Iron Rooster, LLC.[19] On February 14, 2014, KFC sold the property to Iron Rooster.[20] On the date of sale, KFC, Iron Rooster, and Iron Horse

---

[11]   R. Doc. 13-13; R. Doc. 13-16.
[12]   R. Doc. 65-3 at 2; R. Doc. 76-1 at 3.
[13]   R. Doc. 13-13; R. Doc. 13-17 at 39.
[14]   R. Doc. 65-3 at 3; R. Doc. 76-1 at 3.
[15]   R. Doc. 65-3 at 7; R. Doc. 76-1 at 5.
[16]   R. Doc. 13-13 at 2.
[17]   R. Doc. 13-9; R. Doc. 65-3 at 3; R. Doc. 76-1 at 4.
[18]   R. Doc. 13-9 at 2; R. Doc. 65-3 at 3; R. Doc. 76-1 at 4.
[19]   R. Doc. 65-3 at 7; R. Doc. 76-1 at 5.
[20]   *Id.*

signed an Assignment, Assumption, and Indemnification Agreement.[21]  The indemnification agreement provided that Iron Horse and Iron Rooster would assume KFC's obligations related to the contamination, the remediation, and the settlement agreement, and that they would complete the remediation "in a diligent and expeditious manner."[22]

In June 2016, the LDEQ sent letters to both KFC and Iron Rooster regarding the status of remediation.[23]  A June 14, 2016 letter to Iron Rooster stated that off-site remediation sampling revealed that constituents of concern exceeding applicable standards were present on the adjoining property and would require additional remediation.[24]  A June 6, 2016 letter to KFC states that on-site remediation and monitoring of site conditions ceased after Iron Rooster purchased the Property, and that KFC remains obligated to remediate the on-site and off-site contamination.[25]

On December 1, 2016, KFC filed suit against Iron Rooster and Iron Horse.[26]  KFC alleged that defendants failed to fulfill their obligation under the purchase agreement and the indemnification agreement to remediate the

---

[21]   R. Doc. 13-11; R. Doc. 65-3 at 7; R. Doc. 76-1 at 5.
[22]   R. Doc. 13-11 at 3.
[23]   R. Doc. 1-2; R. Doc. 76-4.
[24]   R. Doc. 76-4 at 1.
[25]   R. Doc. 1-2 at 41-42.
[26]   R. Doc. 1.

PERC contamination.[27]  On February 23, 2017, defendants filed an answer to KFC's complaint and counterclaims.[28]   Then on February 9, 2018, defendants filed a motion seeking leave to file a third-party complaint against PSI,[29] which the Court granted.[30]  On July 31, 2018, the Court granted PSI's motion to transfer defendants' third-party action to the Northern District of Illinois for *forum non conveniens*.[31]   Trial was scheduled to commence on August 13, 2018.[32]

### B.   Settlement Discussions

In July 2018, the parties engaged in settlement discussions.  On July 24, 2018, counsel for defendants submitted a letter to Magistrate Judge North setting forth the terms of a settlement offer.[33]  The letter presented three possible settlement options that defendants would be willing to accept.[34] On July 25, KFC responded to defendants' letter.[35] KFC dismissed two of the options as unacceptable, and presented a counteroffer to the third

---

[27]    *Id.* at 9-10.
[28]    R. Doc. 7.
[29]    R. Doc. 47.
[30]    R. Doc. 57.
[31]    R. Doc. 154.
[32]    R. Doc. 49.
[33]    *See* R. Doc. 173-2.
[34]    *Id.*
[35]    *See* R. Doc. 173-3.

option.[36]   In this counteroffer, KFC agreed to waive its claims against defendants in exchange for (1) a payment equal to "all of the costs and expenses" KFC incurred after the sale of the property to defendants, and (2) defendants' entering into a consent decree governing defendants' future remediation of the Property.[37]  That proposed consent decree would require defendants to remediate the property in accordance with the LDEQ's requirements, at no cost to KFC.[38]

Stephen P. Schott, counsel for KFC, states in an affidavit that KFC intended in the July 25 counteroffer to retain its indemnification rights under the parties' indemnification agreement for any costs KFC incurred after settlement was reached.[39]  Schott avers that KFC intended to waive only the indemnification claim in its complaint in this lawsuit, through which KFC sought to recover the costs incurred before any settlement agreement.[40]

On the morning of July 31, John Waters, counsel for defendants, sent Schott a text message with regard to KFC's July 25 counteroffer.  The text message stated:

---

[36]     *Id.*
[37]     *Id.* at 1-2.
[38]     *Id.*
[39]     R. Doc. 173-1 at 1-2.
[40]     *Id.*

6

> Steve, thanks for your call yesterday evening.  Spoke to Mr. Caldarera.[41]  He's not interested.  His proposal is simple: a $150,000 payment by KFC, and KFC lets Iron Rooster control the remediation including the VRAP going forward.  Let me know by 10:30 this morning.[42]

Schott states that after he received this text message, he and Waters had a telephone conversation, in which he restated to Waters KFC's requirement that, consistent with KFC's July 25 letter, the remediation must result in a certificate of completion from LDEQ and must satisfy KFC's remediation obligations stemming from its original 2000 settlement and stipulated consent decree.[43]  According to Schott, Waters stated that he understood KFC's requirements.[44]  The parties then informed the Court that they had reached a settlement agreement.[45]  The Court subsequently issued an order of dismissal, in which it stated that "having been advised by counsel for all parties that they have firmly agreed upon a compromise," the action was dismissed "without prejudice to the right, upon good cause shown, within sixty days, to reopen the action if settlement is not consummated."[46]

---

[41]   Joseph Caldarera is Iron Rooster's owner.  *See* R. Doc. 99-2 at 2.

[42]   R. Doc. 173-1 at 2; R. Doc. 166-3.

[43]   R. Doc. 173-1 at 2-3.

[44]   *Id.* at 3.

[45]   *Id.*

[46]   R. Doc. 155.

Later in the afternoon of July 31, the parties began the process of formalizing their settlement agreement.  Schott emailed Waters and Rick Curry, another lawyer for defendants, that he would "prepare a summary of the terms of the settlement."[47]  Schott attached to that email a copy of the July 25 counteroffer that he sent to Magistrate Judge North and defendants.[48]  Schott now claims that he attached the July 25 letter because he "understood that certain terms set forth in the letter were part of the settlement."[49]  Less than an hour after Schott sent this email, Curry responded with what defendants "anticipate[d]" in the formal settlement materials.[50]  Curry stated, *inter alia*:

> [I]f requested by KFC, Iron Rooster will list KFC as a co-applicant on any voluntary remedial action plan addressing contamination on the Property, provided, however, that KFC shall have no role in choosing the timing, sequence or method of investigation or remediation, or in choosing the contractor or in making any other decision by which Iron Rooster conducts investigation and remediation of either the Property or the Adjoining Property. . . .

> Iron Rooster requires absolute control over the remediation process. . . . If the LDEQ initiates an enforcement action against KFC based on abandonment of the remediation by Iron Rooster, then KFC may or may not have a right to move to enforce the stipulated judgment; however, Iron Rooster will not agree to any

---

47   R. Doc. 173-4.
48   *See id.*
49   R. Doc. 173-1 at 3.
50   R. Doc. 173-5.

language in the settlement or judgment that could be construed as an agreement to reopen the litigation.[51]

The parties continued to discuss the particulars of a formal settlement agreement the rest of that afternoon and evening.[52]  Curry sent a follow-up email stating that Iron Rooster "will commit to remediate the properties to LDEQ['s] standards," but that the settlement agreement would "need to make explicit that Iron Horse has no ongoing obligation."[53]  In response to this email, Schott indicated that KFC sought a provision allowing it to reopen the litigation to enforce the settlement agreement, if necessary.[54]  Curry responded that Iron Rooster would "not agree to any provision that would give KFC any right to reopen the settlement based on KFC's dissatisfaction with the method or pace of remediation."[55]  Curry emphasized that Iron Rooster did not want to "give KFC any authority to monitor Iron Rooster's remediation" of the Property.[56]

The next day, on August 1, 2018, KFC sent defendants the formal letter detailing the terms of a settlement agreement.[57]  The letter outlined

---

[51]     *Id.*
[52]     *See* R. Doc. 173-6.
[53]     *Id.*
[54]     *See id.* ("I think it is reasonable and typical to have a reopener provision to enforce the settlement if necessary.").
[55]     *Id.*
[56]     *Id.*
[57]     *See* R. Doc. 173-7.

defendants' obligations to remediate the Property and the adjoining property.[58]  The letter further stated that the parties would enter into a "Remediation and Settlement Agreement," whereby the parties would mutually release their causes of action against one another.[59]  Finally, the letter stated that in the event that the LDEQ or any other government agency threatened to take enforcement action against KFC because Iron Rooster had failed to complete its remediation obligations, KFC had the right to file a motion reopening this litigation to enforce the terms of the agreement.[60]

The parties continued to negotiate the terms of an agreement throughout August.[61]  On August 31, 2018, Curry emailed Schott a version of KFC's most recent version of the agreement, with defendants' revisions in redline.[62]  Curry stated in his cover email that he did not "believe that there is serious substantive disagreement on the majority" of the provisions in the agreement.[63]  But defendants' redline revisions show that the parties still had a disagreement about the degree of defendants' control over the remediation, and defendants' obligations to KFC in the event that the LDEQ initiated

---

[58]   *Id.* at 2-3.
[59]   *Id.* at 4.
[60]   *Id.* at 4-5.
[61]   *See* R. Doc. 173-8.
[62]   *Id.*
[63]   *Id.* at 1.

additional adverse actions against KFC.[64]  For instance, defendants deleted a provision requiring Iron Rooster to reimburse KFC for all costs, fees, and expenses KFC would incur in the event that the LDEQ initiates any enforcement action against KFC for defendants' inability to remediate the Property.[65]  Defendants' revisions also added a sentence providing that the settlement agreement would supersede any other agreements the parties had previously entered into.[66]   According to KFC, this provision would "effectively eliminate KFC's indemnification rights" contained in the indemnification agreement the parties entered into in connection with the sale of the Property.[67]

According to Schott, the parties continued to attempt to resolve their differences after this August 31 correspondence.[68]  But the parties were unable to come to an agreement.  On November 7, 2018, KFC filed an *ex parte* motion to reopen the case.[69]

---

[64]     *See id.* at 4-5.
[65]     *Id.* at 4.
[66]     *Id.* at 5.
[67]     R. Doc. 173 at 7.
[68]     R. Doc. 173-1 at 4.
[69]     R. Doc. 165.  Prior to moving to reopen the case, the parties had twice moved for extensions to consummate the agreement they purportedly entered into on July 31, 2018.  *See* R. Doc. 157; R. Doc. 162.  The Court granted both motions.  *See* R. Doc. 159; R. Doc. 164.

On November 8, 2018, defendants moved to enforce the settlement agreement the parties purportedly entered into.[70]  Defendants claim that the parties agreed to a settlement of this litigation on the terms included in their counsel's July 31 text message to KFC's counsel.[71]  Defendants separately move for a jury trial under Federal Rule of Procedure 39(b).[72]  KFC opposes both motions.[73]

## II.   DISCUSSION

### A.   Motion to Enforce Settlement

Louisiana law applies to plaintiff's motion to enforce settlement because the Court's jurisdiction is based on the parties' diversity of citizenship.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Louisiana law provides that a settlement, or "compromise" agreement, "is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal

---

[70]   R. Doc. 166.

[71]   R. Doc. 166-3 at 1.

[72]   R. Doc. 171.

[73]   R. Doc. 173; R. Doc. 178.  In its 60-day dismissal order, the Court specifically stated that it retained jurisdiction over this action if settlement is not consummated.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (a court may retain jurisdiction over a settlement agreement by including in its order of dismissal a provision stating that it intends to retain jurisdiction).

relationship."  La. Civ. Code art. 3071.  The agreement must "be made in writing or recited in open court" to be enforceable.  La. Civ. Code art. 3072. Emails and text messages can qualify as signed writings under this provision. *Preston Law Firm, LLC v. Mariner Health Care Mgmt. Co.*, 622 F.3d 384, 391 (5th Cir. 2010); La. R.S. 9:2607 ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."). Louisiana law does not require all of the terms of a settlement agreement to be contained in one document.  *Parich v. State Farm Mut. Ins. Co.*, 919 F.2d 906, 913 (5th Cir. 1990).  Instead, "multiple documents which, when read together, outline the obligations of each party and evidence each party's acquiescence in the agreement may effect a valid compromise agreement." *Id.*  "There are two essential elements of a compromise: (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences."  *Preston Law Firm, LLC*, 622 F.3d at 390 (quoting *Klebanoff v. Haberle*, 978 So. 2d 598, 602 (La. App. 2 Cir. 2008)).

There is no enforceable compromise between the parties because the record before the Court indicates there was never a meeting of the minds as to the specific terms of a settlement.  Defense counsel's July 31 text message to KFC's counsel presented the terms of defendants' proposed settlement

offer.[74]  According to Schott, KFC agreed to settle the matter after receiving this text message because it was under the impression that the terms in KFC's July 25 proposal related to defendants' remediation obligations would be included in a final, formal agreement.[75]  KFC's acquiescence to defendants' July 31 text message was not reduced to writing other than in the Court's 60-day dismissal order, which simply stated that the Court had "been advised by counsel for all parties" that a compromise had been reached.[76]  There is thus no documentary evidence before the Court establishing that KFC agreed to a settlement on the terms presented in the July 31 text message alone.

The record before the Court instead shows that the parties never came to an agreement as to the terms of a final compromise.  On the evening of July 31, 2018—hours after they notified the Court of their settlement—the parties had a clear disagreement about the settlement's terms.[77]  The emails between the parties reveal that they disagreed about KFC's ongoing rights with respect to defendants' remediation.[78]  Specifically, KFC sought to include a provision allowing it to reopen the litigation if defendants failed to

---

74    *See* R. Doc. 166-3 at 1.

75    R. Doc. 173-1 at 3.

76    *See* R. Doc. 155.

77    *See* R. Doc. 173-5; R. Doc. 173-6.

78    *See* R. Doc. 173-6.

remediate the Property.[79]  Defendants objected to such a provision, and did not want "to give KFC any authority to monitor Iron Rooster's remediation."[80]  The parties' email correspondence further shows that throughout August 2018, they also disagreed about whether Iron Rooster would indemnify KFC for any costs it incurred during a subsequent LDEQ action related to the Property.[81]  These disagreements prevented the parties from finalizing and consummating a settlement.

Defendants argue that KFC attempted to add new terms into the parties' compromise after KFC agreed to settle the matter pursuant to the terms in defendants' July 31 text message.[82]  But, as already addressed, there is no documentary evidence establishing that KFC agreed to settle this dispute according to the terms in defendants' text message.  Instead, the record indicates that KFC had a different understanding of what defendants' counsel meant when he wrote in his text message that KFC would "let[] Iron Rooster control the remediation including the VRAP going forward."[83]  This

---

[79]     *Id.*

[80]     *Id.*

[81]     R. Doc. 173-8 at 4 (defendants' removing from draft settlement agreement a statement that "Iron Rooster shall, promptly after demand by KFC, reimburse KFC for all costs, fees, and expenses, including reasonable attorneys' fees, that KFC incurs to prevent or respond" to any LDEQ actions).

[82]     R. Doc. 177 at 3-7.

[83]     R. Doc. 166-3 at 1.

is evident from KFC's counsel's insistence on including a provision in the compromise allowing KFC to reopen the litigation if defendants failed to remediate the property.[84]   This misunderstanding surfaced only after the parties notified the Court that they reached an agreement and set out to document the compromise.   In such a situation, there is no enforceable compromise between the parties.  *See Amy v. Schlumberger Tech. Corp.*, 771 So. 2d 669, 672 (La. App. 3 Cir. 2000) (finding no enforceable compromise when the parties agreed to settle the action for a sum of money, but subsequent negotiations between the parties revealed they "envisioned something different with regard to the release [defendant] would obtain in exchange for the sum agreed upon"); *Davis v. Garrison Prop. & Cas. Ins. Co.*, 119 So. 3d 927, 930 (La. App. 4 Cir. 2013) (no meeting of the minds when the plaintiff agreed to settle the matter for a sum of money, but the parties later disputed whether the settlement encompassed all of the plaintiff's claims or only her personal injury claim).

It is noteworthy that defendants—who now seek to enforce the purported text message compromise—themselves proposed new terms on the evening of July 31 that were not included in their counsel's earlier text.[85]

---

[84]    *See* R. Doc. 173-6.

[85]    *See id.*

16

Defendants' counsel stated in an email that evening that "as [the parties had] discussed, the settlement will also need to make explicit that Iron Horse has no ongoing obligation."[86]  Thus, while defendants now seek to enforce the terms of their July 31 text message, the documentary evidence before the Court shows that shortly after the text, defendants were adding new terms to the parties' supposedly final compromise.  Defendants actions indicate that neither party intended to be bound by the barebones terms of defendants' July 31 text message.

Finally, the Court notes that this ruling does not turn on a finding that the parties' agreement failed to satisfy Article 3072's requirement that a compromise "be made in writing or recited in open court."  Defendants contend that the Court's 60-day dismissal order satisfies this requirement.[87] The Fifth Circuit has been inconsistent on whether such an order is satisfactory under Article 3072.  *Compare Mull v. Marathon Oil Co.*, 658 F.2d 386, 1981 (5th Cir. 1981) (district court's 60-day dismissal order, along with defendant's letter to plaintiff confirming the settlement and including the settlement sum, satisfied the writing requirement); *with Breland v. La. Pac. Corp.*, 698 F.2d 773, 774-75 n.3 (5th Cir. 1983) (writing requirement not

---

[86]     *Id.*
[87]     R. Doc. 177 at 8-9.

satisfied despite district court's issuance of 60-day dismissal order, because neither the "fact nor the terms of th[e] settlement were recorded in open court").  Courts in this district have cited *Mull* for the proposition that a 60-day dismissal order satisfies Article 3072's "in writing" requirement.  *See, e.g.*, *Melerine v. State Farm Ins. Co.*, No. 06-9568, 2008 WL 506093, at *2 (E.D. La. Feb. 20, 2008); *Smith v. Ford Motor Co.*, No. 98-2299, 1999 WL 649636, at *2 (E.D. La. Aug. 24, 1999).  In those cases—and unlike here—the court was able to ascertain the settlement terms to which the parties agreed.

While the Court is silent as to whether a 60-day dismissal order in the context of this case can satisfy the "in writing" requirement, the present motion highlights the advantages of having the *terms* of a final agreement in writing, or stated in open court, rather than merely the fact of the agreement. "The requirement that the compromise be in writing or recited in open court and susceptible of being transcribed from the record aims at avoiding litigation over what the terms of the settlement are." *Morris, Lee, & Bayle, LLC v. Macquet*, 192 So. 3d 198, 210 (La. App. 4 Cir. 2016).  Here, defendants ask the Court to enforce a settlement according to their July 31 text message, but there is no written evidence that KFC intended to agree to those terms. It is apparent that both parties thought they had an agreement on the afternoon of July 31, which the Court memorialized in its dismissal order.

18

But the terms of that purported agreement are not in writing, were not recited to the Court, and thus cannot be readily ascertained. Defendants now seek to enforce their subjective sense of that agreement, with no documentary evidence that KFC had the same intent. In all, because there is no evidence that the parties had a meeting of the minds as to the terms of the compromise, defendants' motion is denied.

### B.   Motion for Trial by Jury and Discovery

#### 1.   *Rule 39(b) Motion for Trial by Jury*

Defendants also move to convert the action to a jury trial under Federal Rule of Civil Procedure 39(b), and for discovery.[88]   Defendants have not, before to this motion, demanded a jury trial with respect to the claims between them and KFC.   KFC did not include a jury demand in its complaint.[89]  Defendants also did not make a jury demand in their answer to KFC's complaint and counterclaim.[90]   On February 9, 2018, defendants sought leave to file their third-party complaint against PSI, which included a

---

[88]   R. Doc. 171.
[89]   *See* R. Doc. 1.
[90]   *See* R. Doc. 7.

jury demand.[91]  But on July 31, 2018, the Court transferred defendants' third-party complaint to the Northern District of Illinois.[92]

Thus, when the parties notified the Court on July 31 that they had reached a settlement, the only remaining claims in this matter were KFC's and defendants' claims against one another, and neither side had made a jury demand with respect to those claims.  Defendants filed the instant motion on November 19, 2018.[93]

Defendants do not dispute that they failed to comply with Federal Rule of Civil Procedure 38(b) and thereby waived their right to a trial by jury.[94] *See* Fed. R. Civ. P. 38(b)(1) (a party may demand a jury trial "no later than 14 days after the last pleading directed to the issue is served"); Fed. R. Civ. P. 38(d) (a party waives its demand "unless its demand is properly served and filed").  The question at this point is whether the Court should exercise its discretion to order a jury trial under Rule 39(b), which states:

> Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

---

[91]    *See* R. Doc. 47; R. Doc. 47-2 at 30.  The Court granted defendants' motion on February 28, 2018.  R. Doc. 55.

[92]    R. Doc. 154.

[93]    R. Doc. 171.

[94]    R. Doc. 182 at 1-2.

Fed. R. Civ. P. 39(b).  Under Rule 39(b), "the court has broad discretion in determining whether to relieve a party from waiver of jury trial." *Swofford v. B & W, Inc.*, 336 F.2d 406, 408 (5th Cir. 1964).  The Fifth Circuit has explained that the right to a jury in a federal court as declared by the Seventh Amendment is a basic and fundamental feature of our system.  And when the discretion of the court is invoked under Rule 39(b), the court should grant a jury trial in the absence of strong and compelling reasons to the contrary." *Id.* at 409.  Thus, a Rule 39(b) motion "should be favorably received unless there are persuasive reasons to deny it." *Unum v. United States*, 658 F.2d 300, 303 (5th Cir. 1981).

In *Daniel International Corporation v. Fischbach & Moore, Incorporated*, the Fifth Circuit listed five factors to guide the Court's discretion under Rule 39(b).  916 F.2d 1061, 1064 (5th Cir. 1990).  The district court is instructed to consider (1) whether the case involves issues which are best tried to a jury, (2) whether granting the motion would result in a disruption of the court's schedule or that of an adverse party, (3) the degree of prejudice to the adverse party, (4) the length of delay in requesting a jury trial, and (5) the reason for that delay.  *Id.* (citing *Parrot v. Wilson*, 707 F.2d 1262, 1267 (11th Cir. 1983)).  No single factor is dispositive, and "[t]he trial court ought to approach each application under Rule 39(b) with

an open mind and an eye to the factual situation in the particular case, rather than with a fixed policy against granting the application or even a preconceived notion that applications of this kind are usually to be denied." *Lewis v. Thigpen*, 767 F.2d 252, 257 (5th Cir. 1985) (quoting *Pinemont Bank v. Belk*, 722 F.2d 232, 237 (5th Cir. 1984)).  The Court finds that the *Daniel* factors weigh in favor of granting defendants' motion under Rule 39(b).

First, the remaining issues in this case amount to a contract dispute. The Fifth Circuit has held that such disputes are "well within the comprehension of a jury."  *Daniel Int'l Corp.*, 916 F.2d at 1064.  The parties dispute whether KFC misrepresented the condition of the Property in the purchase agreement, the indemnification agreement, and in the documents exchanged in advance of those agreements.[95]  The parties also dispute whether defendants satisfied their remediation obligations under the terms of the various agreements.[96]  These issues are not—as KFC contends[97]—

---

[95]    *See* R. Doc. 153 at 14-16 (pretrial order list of contested issues of fact); *see also* R. Doc. 87 at 9 (Order and Reasons denying KFC's motion for summary judgment on its claims, in which Judge Engelhardt held that whether KFC "made material [mis]representations regarding the status of remediation is a plainly disputed question of fact").

[96]    *See* R. Doc. 153 at 14-16; *see also* R. Doc. 87 at 9 (noting that "the parties dispute the extent of defendants' alleged efforts to fulfill the remediation obligations, specifically whether such efforts were 'diligent and expeditious,' as required by the contract").

[97]    R. Doc. 178 at 7-8.

matters of contractual interpretation, but factual questions related to the parties' fulfillment of their contractual obligations.  The first factor thus weighs in favor of granting defendants' motion.  *Id.*

Second, granting the motion will not disrupt the Court's schedule.  A new scheduling order has not yet been issued since the matter was reopened. The second *Daniel* factor thus also weighs in favor of granting the motion.

Third, KFC has not shown how granting defendants' motion would subject it to significant prejudice that outweighs the Fifth Circuit's guidance that Rule 39(b) motions should be "favorably received."  *Unum*, 658 F.2d at 303.  KFC contends that all of its trial preparation, "including the manner in which it conducted discovery, the selection of its witnesses, the selection of expert witnesses and the preparation of expert reports, was done based on the expectation that the case would be submitted to a judge, rather than a jury."[98]  But following the issuance of this Order, KFC will have ample time to prepare for a jury trial, because the Court will not set the trial date until at least September 2019.  KFC will thus have time to tailor its evidence to be presented to a jury.  *Cf. Hogan v. Bituminous Cas. Co.*, No. 96-1135, 1998 WL 2360, at *3 (E.D. La. Jan. 5, 1998) (finding prejudice to nonmoving party

---

[98]     *Id.* at 9.

when trial was scheduled to commence two months from the date of the court's order).

KFC has also not specifically stated how it would have conducted its depositions, selected its witnesses, or prepared its expert reports differently had it known its claims would be tried by a jury. *See Parakkavetty v. Indus Int'l, Inc.*, No. 02-1461, 2003 WL 22939104, at *2 (N.D. Tex. Dec. 2, 2003) (granting motion for jury trial when defendant failed to demonstrate how it would have conducted discovery differently). While granting this motion may result in slight prejudice to KFC because of the decisions it made during discovery, the Court does not find that such prejudice outweighs the Fifth Circuit's clear preference for trials by jury. *See Swofford*, 336 F.2d at 408; *Dallas & Mavis Specialized Carrier Co., LLC v. Pac. Motor Transp. Co.*, No. 06-1992, 2008 WL 696430, at *4 (N.D. Tex. Mar. 12, 2008) (finding that "slight degree of prejudice" to defendant as a result of the manner in which it conducted discovery did not weigh against granting the plaintiff's Rule 39(b) motion).

The fourth and fifth *Daniel* factors do weigh against defendants' motion. Because KFC answered defendants' counterclaim on April 5, 2017,[99] defendants' were required to file a jury demand with respect to the claims

---

[99]     R. Doc. 9.

between them and KFC by April 19, 2017. *See* Fed. R. Civ. P. 38(b)(1). Defendants did not file a jury demand before that date. They instead first formally moved for a jury trial on these claims when they filed the instant motion on November 19, 2018. Defendants now argue that they were under the "perhaps incorrect[]" assumption that the jury demand in their third-party complaint against PSI applied to the claims between them and KFC.[100] Defendants' assumption is difficult to fathom. They appeal to no caselaw or logical principles to support their contention that a jury demand in a third-party complaint could or would automatically apply to the other claims in a case. As the present motion shows, defendants evidently understand that a Rule 39(b) motion is the proper mechanism for seeking a jury trial after the deadline for making a demand has passed. But defendants did not make such a motion when they sought leave to file their third-party complaint on February 9, 2018, nearly ten months after the Rule 38(b) deadline had elapsed.

The Court nevertheless concludes that the *Daniel* factors weigh in favor of granting defendants' motion. Because there is no trial date currently scheduled, granting defendants' motion has no effect on the Court's schedule, and KFC will have ample time to prepare its evidence to be

---

[100]   R. Doc. 171-1 at 12.

presented to a jury.  Any slight prejudice to KFC is not sufficient to overcome the Fifth Circuit's clear preference for granting Rule 39(b) motions.

### 2.  *Motion for Discovery*

Defendants also seek additional discovery before trial.[101]  Defendants bluntly contend that "discovery is not complete" because when the parties purported to settle this matter on July 31, defendants had a pending motion to compel discovery and for sanctions before the Magistrate Judge.[102]  That motion was noticed for hearing on August 1.[103]  The discovery deadline had already passed when defendants filed their motion.[104]

Defendants do not present any compelling reason for why discovery should be reopened before trial.  Defendants instead simply rehash the arguments they present in their motion to compel.[105] Defendants are entitled to whatever relief the Magistrate Judge grants them in light of their pending motion to compel and for sanctions.  But the Court denies defendants' motion to the extent defendants seek to reopen discovery beyond whatever may be compelled by the Magistrate Judge.  The Court requests that the

---

[101]    *Id.* at 14-15.

[102]    *Id.*

[103]    R. Doc. 152.

[104]    *See* R. Doc. 49 (setting discovery deadline as 60 days prior to the August 13, 2018 trial date); R. Doc. 142 (defendants motion to compel and for sanctions dated July 17, 2018).

[105]    *See* R. Doc. 171-1 at 14-15; R. Doc. 182 at 5-8; R. Doc. 142.

Magistrate Judge specify the limits of any discovery that it compels in response to the pending motion.

## III.   CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to enforce settlement and motion for additional discovery.  The Court GRANTS defendants' Rule 39(b) motion for a trial by jury.  A scheduling conference will be held by telephone on March 28th at 10:45 a.m. for the purpose of scheduling a jury trial to take place the week of October 7, 2019, or October 15, 2019, as well as a pretrial conference.  The Court will initiate the telephone conference call and will be represented at the conference by its case manager.

New Orleans, Louisiana, this  12th   day of March, 2019.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

27